UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HEATHER A. COSTIGAN,<br><br>              Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>              Defendant. | CASE NO. C06-5425RJB<br><br>ORDER |

This matter comes before the Court on the United States' Motion for Summary Judgment. Dkt. 12. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action against the United States, asserting two claims under the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. § 2674 *et seq.,* arising from injuries she alleges she sustained during Fort Lewis gate guard training. Dkt. 1. Plaintiff's first claim is that the United States, through the Department of the Army ("Army") and its agent, John Gouveia, was negligent in causing physical, mental, and emotional injuries to Plaintiff. *Id*. at 3. Plaintiff's second claim is that the United States negligently trained, supervised, and/or retained John Gouveia in providing security training services at Ft. Lewis Army Base, Washington. *Id.*

Due to the wars in Iraq and Afghanistan, the Army decided to hire contractors to guard

ORDER
Page 1

1   the gates at Fort Lewis Army Base, Washington, to ease military police staffing shortfalls. Dkt.
2   12-3, at 36-37. AKAL Security Inc. ("AKAL") was awarded the contract to provide gate guards
3   for Fort Lewis. *Id.* at 9. The Army decided that the AKAL personnel would participate in a
4   training course before they began guarding the gate. Dkt. 12-3, at 10. In February of 2004,
5   Sergeant First Class Andrew J. Marks, was assigned to the training section of the First Military
6   Police Brigade. Dkt. 12-3, at 8. Marks was given one to two weeks to schedule training classes
7   for the AKAL civilians hired to fill the gate guard positions. *Id.* at 9. Marks chose Staff Sergeant
8   John Gouveia to teach the defensive tactics portion of the training. *Id.* at 10. Gouveia was
9   chosen because he was certified as an instructor of unarmed defensive tactics by the Washington
10  State Criminal Justice Training Center. *Id.* at 39-40. Marks stated that he was unaware of any
11  reports of injuries sustained while people were taking Gouveia's course. *Id.* at 40.

12      Plaintiff's version of the events that led to her alleged injuries is as follows: Plaintiff was a
13  civilian employee of AKAL, and participated in the February 6, 2004 defensive tactics training
14  session taught by Gouveia. Dkt. 12-5, at 8-9. During that session, Plaintiff alleges that Gouveia
15  injured her on three separate occasions. *Id.* at 10. The first incident occurred during a break
16  when Gouveia grabbed her by the hair and showed the other people a "takedown move." *Id.* at
17  11. He pulled her from a standing position to a sitting position by her hair. *Id.*

18      The next incident occurred while the class was in session. *Id.* at 21. Plaintiff relates that
19  Gouveia said "now this is how you deal with women" and then "he grabbed [her] by the back of
20  [her] braids. . . . He pulled [her] down to the sitting position. . . . And he spun [her] around in a
21  complete circle with [her] body off the ground by [her] hair." *Id.* Plaintiff then briefly blacked
22  out. *Id.* at 24. Plaintiff was nauseated, and had pain in her neck and back. *Id.* at 27-28. Gouveia
23  acknowledges that he heard a "pop" in Plaintiff's neck. Dkt.12-4, at 43-44.

24      The third incident occurred at the end of the class. Dkt. 12-5 at 31. Gouveia asked that
25  all female participants stand in the center of the room, in order to demonstrate "hair take down
26  techniques." *Id.* at 30. After demonstrating on the other women in the group, Gouveia grabbed
27  Plaintiff by the back of the hair, pulled her from a standing position onto her lower back region
28

ORDER
Page 2

1 and quickly drug her from the middle of the basketball court to the end. *Id*. at 38-39. At this
2 point, Plaintiff relates that her scalp was bleeding. *Id.* After the class was over, Plaintiff
3 threatened to quit. *Id*. at 43. Gouveia apologized to Plaintiff. *Id*. Plaintiff did not immediately
4 quit, and began working as a gate guard. *Id*.

5     The United States moves for summary judgment, arguing that: the FTCA bars any claim
6 arising out of assault or battery unless the perpetrator is a United States law enforcement officer.
7 Dkt. 12, at 7. The United States urges that Gouveia was not acting as a law enforcement officer
8 when Plaintiff's injuries occurred. *Id*. Plaintiff argues that Gouveia is a law enforcement officer
9 because law enforcement covers a large part of his duties, and he teaches the same course to
10 military members and it is entitled "Law Enforcement Certification." Dkt. 14, at 8. The United
11 States argues that Gouveia was teaching a class and was not acting in a law enforcement capacity,
12 and so the bar to intentional torts applies. Dkt. 16, at 4.

13     The United States also argues that summary judgment is properly granted here because
14 Plaintiff's allegations of negligent supervision, training and retention are not supported by the
15 evidence. Dkt. 12, at 7-9. Plaintiff argues that the evidence supports allegations of negligent
16 supervision. Dkt. 14, at 8. The United States moves the Court to not consider the opinion of
17 Plaintiff's expert regarding the adequacy of the training program due to late disclosure. Dkt. 16.
18 The United States argues that, in any event, there is no evidence in the record that the United
19 States could have foreseen Plaintiff's injury, and therefore, her claims for negligent supervision,
20 training, and/or retention should be dismissed. *Id.*

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

23     Summary judgment is proper only if the pleadings, depositions, answers to interrogatories,
24 and admissions on file, together with the affidavits, if any, show that there is no genuine issue as
25 to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.
26 P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party
27 fails to make a sufficient showing on an essential element of a claim in the case on which the

1 nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).
2 There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a
3 rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith*
4 *Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant
5 probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e).
6 Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting
7 the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.
8 *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific*
9 *Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

10        The determination of the existence of a material fact is often a close question.  The court
11 must consider the substantive evidentiary burden that the nonmoving party must meet at trial –
12 e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect.*
13 *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor
14 of the nonmoving party only when the facts specifically attested by that party contradict facts
15 specifically attested by the moving party.  The nonmoving party may not merely state that it will
16 discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial
17 to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.
18 Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be
19 "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

20        **B.**    **FEDERAL TORT CLAIMS ACT INTENTIONAL TORT EXCEPTION**

21        The United States, as sovereign, is immune from suit except where it consents to be sued.
22 *U.S. v. Sherwood*, 312 U.S. 584, 586 (1941).  The FTCA provides consent for suit against the
23 United States "for injury or loss of property, or personal injury or death caused by the negligent
24 or wrongful act or omission of any employee of the Government while acting within the scope of
25 his office or employment." 28 U.S.C. § 1346(b). The purpose of the [FTCA] is to provide a
26 remedy to citizens injured by governmental negligence in circumstances in which the same act of
27 negligence would impose liability under state law, but for governmental immunity." *Kearney v.*

28

*United States,* 815 F.2d 535, 536 (9th Cir. 1986).

The FTCA contains some exceptions to the waiver of sovereign immunity. 28 U.S.C. § 2680. Section 2680(h), generally excludes claims arising out of assault and battery from the waiver of immunity. This "intentional tort exception" to the FTCA contains a proviso, however, which provides: "[t]hat, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, . . ., out of assault, [or] battery. . . ." § 2680(h).

Although it appears from the Complaint and her pleadings that Plaintiff is alleging that she is entitled to relief based on Gouveia's negligent performance of these "takedown" moves, to the extent that her claim could be interpreted as arising from an assault or battery, a determination must be made as to whether the intentional tort exception to the FTCA applies. In order to determine whether Plaintiff's claims are barred by the intentional tort exception to the FTCA, this Court's inquiry must begin with an examination of the language of the statute. The FTCA intentional tort exception proviso in § 2680(h) defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Parties do not dispute that Gouveia's regular duties, as a member of one of the Army's military police units, include executing searches, seizing evidence, and making arrests for violations of Federal law. Parties do not dispute that teaching the class was within the scope of his employment.

The U.S. argues that while teaching the class, Gouveia was not acting as a "law enforcement officer," engaged in "law enforcement activity," and therefore the proviso waiving immunity should not apply here. Dkt. 12, at 7, and Dkt.16, at 4. The Government, in essence, seeks to limit the waiver of immunity to claims arising from law enforcement officers engaged in executing searches, seizing evidence, and making arrests for violations of Federal law. The Government's argument is an overly narrow reading of the statute. The record indicates that it was because of his status and experience as a law enforcement officer that Gouveia was teaching the class. It was a part of his duties as a U.S. law enforcement officer. Moreover, the first

ORDER
Page 5

portion of the proviso states that the waiver of immunity shall apply to any claim arising out of assault, or battery, etc., with regard to **acts or omissions** of U.S. law enforcement officers. The second sentence of the proviso defines "law enforcement officers," but does not strictly limit the activities for which immunity is waived. A fair reading of the statute includes a more expansive view of the waiver of immunity than urged by the government. *See e.g. Bramwell v. Bureau of Prisons*, 348 F.3d 804 (9th Cir. 2003) (holding that, despite a split among the circuits, Bureau of Prison Officers are "law enforcement officers" for the purpose of the 26 U.S.C. § 2680 (c) exception). A fair reading of the proviso, then, includes actions or omissions of U.S. law enforcement officers engaged in law enforcement activities such as teaching defensive tactics training. Legislative history of the proviso, added as an amendment to the FTCA in 1974, also supports this reading. Although the legislative history discusses the intent to waive immunity from suit for improper searches, Congress also indicated that "the Committee's amendment should not be viewed as limited to constitutional tort situations but would apply to any case in which a Federal law enforcement agent committed the tort while acting within the scope of his employment or under color of Federal law." S. Rep. No. 588, 93rd Cong. 2.d Sess. 2-3(1974), *reprinted in* 1974 U.S. Code Cong. & Ad. News 2789, 2790-91. Although Gouveia was not engaged in executing a search, seizing evidence, or making an arrest, teaching a class in defensive tactics was a part of his duties as a law enforcement officer of the United States, and therefore comes within the proviso of the intentional tort exception to the FTCA. The Court is mindful that "[t]he proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify those circumstances which are within the words and reason of the exception - no less and no more." *Kosak v. U.S.,* 465 U.S. 848, 853 n. 9 (1984)(*internal citations omitted)*(rejecting the government's argument that exceptions to waivers of sovereign immunity should be construed in favor of the sovereign). Accordingly, to the extent that Plaintiff is making a claim arising out of an assault or battery, the proviso to the intentional tort exception to the FTCA applies in this case.

      C.     **NEGLIGENT TRAINING**, **SUPERVISION, AND/OR RETENTION CLAIM**

1    Plaintiff's second claim is that the United States negligently trained, supervised, and/or
2 retained John Gouveia in providing security training services at Ft. Lewis Army Base,
3 Washington. Dkt. 1, at 3.
4    The Ninth Circuit "cases distinguish between negligence based entirely on a theory of
5 **respondeat superior** (which cannot give rise to liability on the part of the United States under the
6 FTCA for the intentional torts of government employees) and independent negligent acts or
7 omissions by the government that are proximate causes of the harm (which can give rise to
8 liability on the part of the United States under the FTCA for the intentional torts of government
9 employees)." *Senger v. United States*, 103 F.3d 1437, 1441(9th Cir. 1996) (*citing Bennett v.
10 U.S.*, 803 F.2d 1502, 1504 (9th Cir. 1986)) (*emphasis in original*). "[W]here the government's
11 own negligence is alleged as a proximate cause of the injury, the government cannot claim the
12 *respondeat* immunity that § 2680(h) affords it in cases where the injury arises out of a battery by a
13 government employee." *Kearney v. United States,* 815 F.2d 535, 538 (9th Cir. 1986).
14    In *Bennett v. U.S.*, 803 F.2d 1502 (9th Cir. 1986), the assault and battery exception to
15 FTCA liability was held not to insulate the federal Government from liability for a Bureau of
16 Indian Affairs teacher's sexual assault of students, in light of evidence that Government was
17 negligent in hiring and continuing to employ teacher despite indications of predilection towards
18 sexual abuse. Similarly, in *Kearney*, the Government was not permitted to claim the respondeat
19 superior immunity provided by the assault and battery exception to the FTCA due to its own
20 negligence. In that case, the husband of a murder victim brought a wrongful death action against
21 the U.S. *Id.* The perpetrator, an Army private, was a prisoner in custody on a military base
22 awaiting trial for rape, but was merely restricted to the barracks, mess hall, and orderly room. *Id.*
23 Where the Government's own negligence in placing a known predator in loose custody was the
24 alleged proximate cause of the death, the assault and battery exception to the FTCA was held to
25 not apply. *Id.*
26    Unlike in *Bennett* and *Kearney*, Plaintiff has failed to present any evidence that the
27 government could have foreseen the alleged assaults based on its knowledge of Gouveia and his
28

1  prior course instruction. The record indicates that the government was unaware of any reported
2  injuries committed by Gouveia during his instruction of defense tactics classes, or that he was
3  otherwise dangerous. Dkt. 12-3 at 40. Gouveia was certified as an instructor of unarmed
4  defensive tactics by the Washington State Criminal Justice Training Center. *Id*. at 39-40.
5  Moreover, Plaintiff's criticism of the adequacy of the class is unhelpful. Whether the class
6  properly prepared the AKAL employees to guard the gates at Fort Lewis does not relate to
7  whether the government could have foreseen the alleged actions taken by Gouveia. Plaintiff has
8  failed to show that there are genuine issues of material fact. The United States' Motion for
9  Summary Judgment should be granted on the claim for negligent training, supervision, and/or
10 retention.

### D. LATE DISCLOSURE OF EXPERT WITNESS

12  The United States asks that the Court not consider the opinion of Sergeant Don Machado
13 due to the Plaintiff's late disclosure of him. Dkt. 16. The Scheduling Order set the disclosure
14 date for expert witnesses for April 12, 2007, (Dkt. 10) and Plaintiff did not disclose her intention
15 of using Sergeant Don Machado as an expert witness until May 29, 2007 (Dkt. 14). Plaintiff's
16 counsel indicates that the expert that she had disclosed initially, Robert M. Bragg, informed her
17 that he was now unable to provide an expert opinion for Plaintiff. Dkt. 17. The discovery
18 deadline is June 11, 2007 and the dispositive motions deadline is July 11, 2007. Dkt. 10.

19  Pursuant to Fed. R. Civ. P. 16(b) "[i]f a party or a party's attorney fails to obey a
20 scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, may make
21 such orders as are just." The United States's motion should be granted, and <u>for the purposes of
22 this motion only</u>, Sergeant Don Machado's opinion should not be considered. Plaintiff failed to
23 make a move to extend the time to disclose expert witnesses. She disclosed her intention to use
24 the expert witness's opinion over six weeks late, and only in an attempt to repel a motion for
25 summary judgment.

ORDER
Page 8

### III. ORDER

Therefore, it is hereby **ORDERED**:

- The United States' Motion for Summary Judgment (Dkt. 12) is **GRANTED IN PART AND DENIED IN PART**; Plaintiff's first claim, that the United States, through the Department of the Army and its agent, John Gouveia, was negligent in causing physical, mental, and emotional injuries to Plaintiff is **NOT DISMISSED**. Plaintiff's second claim, that the United States negligently trained, supervised, and/or retained John Gouveia, is **DISMISSED**.
- The United States' Motion for the Court to not consider, for the purposes of this motion, the opinion of Sergeant Don Machado (Dkt. 16) is **GRANTED**; and
- The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 7th day of June, 2007.

Robert J. Bryan
United States District Judge